IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| LYNN T. STIMUS, n/k/a LYNN YARBOROUGH ) ) ) Plaintiff, ) ) v. ) ) CITIMORTGAGE, INC. and ) FEDERAL NATIONAL MORTGAGE ) ASSOCIATION, INC., ) ) Defendants. ) _____) | CIVIL ACTION NO. 5:10-CV-435(MTT) |

## ORDER

This matter is before the Court on the Defendants' Motions to Dismiss (Docs. 9 and 10) and the Plaintiff's Motion to Amend (Doc. 16). For the reasons set forth below, the Motions are granted in part and denied in part.

### I. FACTUAL BACKGROUND

On October 12, 2005, Plaintiff Lynn Stimus purchased a house located at 110 Constance Court, Perry, Georgia. Plaintiff alleges that the total purchase price was $507,000.00. She borrowed $287,000.00 from CitiMortgage and executed a Note and Security Deed, granting Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for CitiMortgage, a security interest in the property. MERS assigned its right, title, and interest in the Security Deed to CitiMortgage on June 25, 2008. The Note called for monthly payments in the amount of $1,674.85, and stated that failure to pay

the full amount of each monthly payment on the date it is due will place the borrower in default. (Doc. 16-3 at 5-6).

In 2005, the Plaintiff's ex-husband stopped making child support and alimony payments to the Plaintiff. These payments had previously been used by the Plaintiff to meet her monthly mortgage obligation. Sometime thereafter, the Plaintiff became unable to make her monthly payments and, consequently, on June 23, 2008, CitiMortgage notified the Plaintiff that she was in default and that the Security Deed would be foreclosed.

In July 2008, the Plaintiff contacted CitiMortgage and requested options to modify the loan. On August 25, 2008, the Plaintiff submitted a hardship affidavit as part of CitiMortgage's Workable Solutions program and requested that she be allowed to sell the property. On August 28, CitiMortgage sent the Plaintiff a letter acknowledging receipt of her hardship affidavit and warning the Plaintiff that CitiMortgage was "unable to suspend collection or foreclosure activity until such time that a *Workable Solution* has been approved or completed, depending on the type of solution offered." (Doc. 16-3 at 28) (emphasis in original). At this time, the Plaintiff was not sure whether the previously scheduled foreclosure sale, set for September 2, 2008, was postponed, so she contacted CitiMortgage's attorney and agent, Pendergast & Jones, P.C., to ask whether she should remain on the property while awaiting confirmation of the modification process. On September 1, 2008, separate representatives from Pendergast and CitiMortgage told the Plaintiff to vacate the property. The Plaintiff did not learn that the

scheduled foreclosure had been postponed until after she had moved from the property on September 2, 2008.

In late September 2008, the Plaintiff spoke with a CitiMortgage employee named Cessally regarding the status of her Workable Solution. Cessally told the Plaintiff that she would receive notification of whether her Workable Solution had been approved soon. It is noteworthy that at no point in time did anyone at CitiMortgage inform the Plaintiff that she could or should be occupying the property while she awaited a response.

On February 27, 2009, the Plaintiff received a letter from CitiMortgage approving her request to stop the foreclosure process in order to allow her to sell the property. (Doc. 16-3 at 32). The Plaintiff listed the property with a real estate agent, but received no offers during the three months that the property was on the market. Unable to sell the property herself, the Plaintiff contacted CitiMortgage in April 2009 and requested that she convert her existing Workable Solution plan (selling the property) to a modification of her mortgage loan. The Plaintiff paid $1,103.00, and CitiMortgage agreed to start the review process for the Plaintiff to be considered for a modification of her mortgage. At this time, the Plaintiff again inquired into whether she should move back into her home while she waited for the modification, and CitiMortgage, again, told her she did not have to be living on the property to apply for the modification.

In June 2009, the Plaintiff spoke with Cessally, who informed the Plaintiff that she was approved for the loan modification. Cessally quoted the terms of the modified mortgage loan and told the Plaintiff she could move back into her home. The Plaintiff

moved back onto the property in mid-June and, while waiting for the modification to be finalized, made trial period payments of $1,100.00 for the months of July, August, and September 2009.

On August 3, 2009, a CitiMortgage employee called the Plaintiff and told her that her new monthly payment would be $1,274.41 and that she should begin making payments on October 1, 2009. According to the Plaintiff, the CitiMortgage employee quoted to the Plaintiff the new principal amount, the interest rate, and the term of years of the modified loan. At this time, the Plaintiff asked the CitiMortgage employee when she would receive the paperwork for the modification, and the employee assured the Plaintiff that the paperwork had gone to underwriting and that Plaintiff would receive the paperwork in a few weeks.

On September 10, 2009, the Plaintiff received another letter from CitiMortgage, which included a copy of the "Home Affordable Modification Trial Period Plan ("Trial Plan"). (Doc. 16-3 at 39). The Trial Plan mirrored the terms outlined by the CitiMortgage employee the Plaintiff spoke with on August 3. Under the terms of the Trial Plan, the Plaintiff was required to make payments of $1,274.41 for the months of October, November, and December 2009 (plus one additional month if not notified by CitiMortgage earlier). If she complied with all of the terms and conditions of the Trial Plan, CitiMortgage would provide her with a modification agreement that would

permanently modify her mortgage.[1]  The Plaintiff signed the Trial Plan and returned it along with all other documentation CitiMortgage requested.

Pursuant to the Trial Plan, the Plaintiff made payments of $1,274.41 for October and November 2009.  On November 20, the Plaintiff received a letter from CitiMortgage stating that the Trial Plan had been cancelled because the Plaintiff failed to abide by its terms.  (Doc. 16-3 at 43).  The Plaintiff called CitiMortgage to protest the letter and was informed by a CitiMortgage employee that the letter was incorrect and that the Plaintiff was "current" on the Trial Plan.  Sometime thereafter, the Plaintiff received a letter dated December 11, 2009, in which CitiMortgage acknowledged that the November 20 letter was sent mistakenly and confirmed that the Trial Plan was not cancelled.  The Plaintiff claims to have received several additional letters similar to the November 20 letter, all of which were confirmed by CitiMortgage to have been sent by mistake.  The Plaintiff continued to make timely payments under the Trial Plan for the months of December 2009 and January 2010.

Beginning in January 2010, the Plaintiff initiated contact with CitiMortgage to inquire into the status of the modification agreement papers.  Each time the Plaintiff spoke with a CitiMortgage representative, she was told that "the Modification had been approved, was in effect, and that the agreement paperwork for the Modification would be sent to [her] shortly."  (Doc. 16-2 at ¶ 50).  Because of CitiMortgage's affirmations

---

[1] Specifically, the Trial Plan states, "If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage."  (Doc. 16-3 at 43).

that the plan was still in effect, the Plaintiff continued making $1,274.41 payments each month from January until May 2010. CitiMortgage accepted the payments and negotiated the checks, but the Plaintiff never received any paperwork regarding a loan modification.

On May 25, 2010, the Plaintiff received a call from CitiMortgage employee Eli, who informed the Plaintiff that the modification had not been approved because the Plaintiff did not occupy the property when she applied for the modification and that, as a result, the property would be foreclosed. Over the next few weeks, the Plaintiff spoke with several other employees who reiterated that she had not occupied the home when she requested the modification and that the property would be foreclosed. The Plaintiff sent the $1,274.41 payment for June 2010, but CitiMortgage refused to negotiate the check and returned it to the Plaintiff.

On July 2, 2010, the Plaintiff received notice that a foreclosure sale was scheduled for August 3, 2010. Through HOPE for Homeowners, a government program that assists in disputes between homeowners and mortgage companies, the Plaintiff was put in touch with Chelsea Travillison, a CitiMortgage employee who was handling the Plaintiff's loan. According to the Plaintiff, Trivillison "stated that her system showed that the modification was approved but then cancelled because of the lack of occupancy." (Doc. 16-2 at ¶ 63). After the Plaintiff told Travillison that she moved back into the home in June 2009, Travillison stated "that Plaintiff needed to send proof of the occupancy to appeal the denial of the Modification" and "that the foreclosure would be delayed until after August 3, 2010, while CitiMortgage reviewed the occupancy records."

(Doc. 16-2 at ¶ 64). The Plaintiff sent the requested documents showing that she occupied the property at the relevant times, and several different CitiMortgage employees told the Plaintiff that foreclosure of the Plaintiff's property was delayed past August 2010. (Doc. 16-2 at ¶ 72).

On July 18, 2010, CitiMortgage employee Chris contacted Plaintiff and told her that the finding that she had not occupied the property was incorrect and a mistake. (*Id.* at ¶ 73). Chris told the Plaintiff she could continue making payments, which the Plaintiff did, and which CitiMortgage accepted. According to the Plaintiff, she thought this resolved the matter and that she would finally receive the modification paperwork. To the contrary, on July 20, the Plaintiff was contacted by another CitiMortgage employee named Amanda, who told the Plaintiff that the foreclosure sale was still scheduled for August 3. On July 26, CitiMortgage sent another letter requesting that Plaintiff send in additional financial information for a review of her request for a modification. The Plaintiff was out of town and therefore did not receive the letter, but she was contacted by Travillison on July 28. Travillison stated that the Plaintiff could send the information requested in the letter by overnight mail on August 2, 2010. Despite the representations of numerous CitiMortgage employees that the foreclosure was postponed until CitiMortgage reviewed the Plaintiff's request for a modification, CitiMortgage conducted a foreclosure sale of the property on August 3, 2010. CitiMortgage executed a Deed Under Power or Sale and conveyed the property by special warranty deed to Defendant Fannie Mae.

On October 4, 2010, the Plaintiff filed her complaint against the Defendants. After the Defendants moved to dismiss the Plaintiff's complaint, the Plaintiff filed her Motion to Amend to "increase[ ] the allegations … to provide all elements for each cause of action needed for Defendant to ascertain the basis of the claims and for the Court to uphold the claims." (Doc. 16 at 4).

## II. DISCUSSION

Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or … 21 days after service of a responsive pleading or … motion under rule 12(b)." Any time thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A "court should freely give leave when justice so requires." *Id*. However, a "district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (internal quotation marks and citation omitted). Denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Id*. at 1263. In deciding a Rule 12(b)(6) motion to dismiss, the Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004).

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain specific factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, __, U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Federal Rules employ a notice pleading standard, which requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, __ U.S. at __, 129 S. Ct. at 1949. A pleading containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the complaint must "give the Defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (internal quotation marks and citation omitted). The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Id.* at 570. In evaluating the sufficiency of a plaintiff's pleadings, the court "construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts … as true." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

The Plaintiff asserts three main, substantive claims in her complaint: (1) wrongful foreclosure; (2) breach of contract; and (3) fraud. Several of her additional claims, such as quiet title, set aside transfer, and unjust enrichment, are tied up in and dependent upon the viability or lack thereof of one or more of these three main claims. Thus, the Court will first address the Plaintiff's claims of wrongful foreclosure, breach of contract, and fraud, and then will turn to a discussion of the Defendant's remaining claims.

The Plaintiff's claims for wrongful foreclosure, breach of contract, and fraud can be summarized as follows.  With regard to her wrongful foreclosure and breach of contract claims, the Plaintiff claims she and CitiMortgage entered into a modified mortgage agreement under which the Plaintiff made all required payments and complied with all other terms and conditions.  Thus, the Plaintiff contends, CitiMortgage did not have the right to foreclose on the property, and when it did, it breached the terms of the modified contract.  With regard to her fraud claim, the Plaintiff contends that CitiMortgage fraudulently misrepresented the status of the mortgage modification and led her to believe that the modification of her mortgage had been approved and that the property would not be foreclosed upon.  The Plaintiff claims she justifiably relied on these representations to her detriment.

To bolster her claims, the Plaintiff relies heavily on the verbal statements of the numerous CitiMortgage employees she spoke with during the course of the modification process who allegedly quoted to the Plaintiff the exact terms of the modified contract and repeatedly assured her, even as late as July 18, 2010, that the modification had been approved.  Although the Court recognizes that there are potential problems associated with the Plaintiff's reliance on these oral statements to establish her claims— e.g., the statute of frauds—at the motion-to-dismiss stage, the Court is not prepared to say that the Plaintiff's claims are factually implausible.  For example, the Plaintiff has alleged facts that, with the aid of discovery and a more developed record, could support a theory of part performance or equitable estoppel, and therefore preclude application of a statute of frauds defense.  Viewing the allegations of the amended complaint in the Plaintiff's favor, the Court finds that the Plaintiff's wrongful foreclosure, breach of

contract, and fraud claims survive a Rule 12(b)(6) challenge, and therefore are not futile.  The Plaintiff's claims for quiet title/reformation, set aside transfer, and unjust enrichment arise from and are dependent upon the viability of her claims for wrongful foreclosure, breach of contract, and fraud.  Therefore they too survive the Defendants' motions to dismiss.  Accordingly, with regard to the Plaintiff's claims for wrongful foreclosure, breach of contract, fraud, quiet title/reformation, set aside transfer, and unjust enrichment, the Plaintiff's Motion to Amend is **granted** and the Defendants' Motions to Dismiss are **denied**.

The Plaintiff's only remaining claim is that CitiMortgage was negligent in servicing her loan and negligent per se by violating O.C.G.A. §§ 23-2-114 and 44-14-82 and the Real Estate Settlement Procedures Act ("RESPA"),12 U.S.C. § 2605.[2]  The Court finds the Plaintiff's claims of negligence to be without merit.  First, the Plaintiff has not adequately alleged a claim under section 2605 of RESPA.  Section 2605 imposes a duty upon mortgage loan servicers to (1) provide a notice of receipt of a qualified written request within 20 days of receipt of said request; and (2) take certain action with respect to the qualified written request within 60 days of the receipt of said request.  *See* 12 U.S.C. § 2605(e)(1)-(2).  Nowhere in the Plaintiff's complaint does she state what actions of CitiMortgage allegedly violated RESPA other than her conclusory allegation that the "Defendant breached legal duties … under [RESPA] in servicing residential

---

[2] Plaintiff's counsel previously informed the Court that the Plaintiff no longer sought an injunction preventing Fannie Mae from prosecuting the dispossessory action filed against the Plaintiff in the Magistrate Court of Houston County.  Accordingly, that claim, Count Three of the Amended Complaint, is **dismissed as moot**.

mortgage loans." (Doc. 16-2 at ¶ 183). Such an allegation does not support a claim under the statute and therefore is **dismissed**.

The Plaintiff also claims that CitiMortgage acted negligently, in violation of O.C.G.A. §§ 23-2-114 and 44-14-82, when it foreclosed on her property without a valid power of sale. The Plaintiff is correct that these Georgia statutes impose certain legal duties upon the parties to a mortgage contract. Specifically, section 23-2-114 mandates that powers of sale be fairly exercised, and, similarly, section 44-14-82 bars suits to recover property when an action to foreclose and the exercise of power of sale are barred. Although a breach of the duties imposed by these statutes can give rise to a cause of action, the proper cause of action is not negligence, but rather wrongful foreclosure, which the Plaintiff has already asserted and which this Order has already addressed. "Where a grantee does not comply with the statutory duty under O.C.G.A. § 23-2-114 to exercise fairly the power of sale in a deed to secure debt, the debtor may sue for damages for the tort of wrongful foreclosure. *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 448, 662 S.E.2d 141, 147 (2008) (citing *Calhoun First Nat. Bank v. Dickens*, 264 Ga. 285, 285-86, 443 S.E.2d 837, 838 (1994)). Thus, to the extent the Plaintiff wishes to assert that CitiMortgage violated duties imposed by O.C.G.A. §§ 23-2-114 and 44-14-82, she should do so in her claim for wrongful foreclosure. Accordingly, with regard to the Plaintiff's claim that CitiMortgage was negligent, the Motion to Amend is **denied**, the Motions to Dismiss are **granted**, and the Plaintiff's negligence and negligence per se claims are **dismissed**.

## III. CONCLUSION

For the reasons set forth above, the Plaintiff's Motion to Amend and the Defendants' Motions to Dismiss are **granted in part and denied in part**. The Plaintiff's claims for wrongful foreclosure, breach of contract, fraud, quiet title/reformation, set aside transfer, and unjust enrichment shall go forward, and the Plaintiff's claims for injunctive relief and negligence are **dismissed**.

**SO ORDERED,** this 1st day of July, 2011.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT